UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAFEX FOUNDATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> SAFELAUNCH VENTURES LIMITED AND JOHN DOE DEFENDANTS 1-10, <br><br> Defendants. | Case No. 22-cv-572 (CRC) |

## MEMORANDUM OPINION

Since 2015, Plaintiff Safex Foundation, Inc. ("Safex") has marketed cryptocurrencies using the brand name "Safex." Starting in 2021, Defendant SafeLaunch Ventures Limited ("SafeLaunch"), a foreign cryptocurrency company, allegedly infringed Safex's trademark by selling a cryptocurrency similarly called "SafeX." In its last opinion, the Court concluded that it could not exercise personal jurisdiction over SafeLaunch because, on the existing record, it did not have minimum contacts with the District of Columbia or the United States as a whole. The Court afforded Safex the opportunity to engage in jurisdictional discovery on this question, however. But SafeLaunch never responded to Safex's jurisdictional discovery requests. Instead, SafeLaunch's counsel withdrew in May 2023 and SafeLaunch has failed to obtain replacement counsel since then. Accordingly, it has been unable to respond to Safex's discovery requests. Citing SafeLaunch's lack of participation in this case since the withdrawal of its counsel, Safex moves for a default judgment. For the reasons that follow, the Court will grant its motion in part and deny it in part.

I.  **Background**

The Court presumes familiarity with its prior opinion describing the factual and procedural background of this case, so it provides only a summary of the relevant details here. See Mem. Op. & Order, ECF No. 36, at 1–4.

Safex is a non-profit that develops, sells, and promotes its own line of cryptocurrencies, including Safex Token, Safex Cash, and Wrapped Safex Cash. Compl. ¶ 6. These tokens can be used on a proprietary e-commerce platform called Safex Marketplace to purchase goods and services. Compl. ¶¶ 22–23. As relevant here, Safex uses the brand name "Safex" (also referred to as the "Safex Mark") to identify its products and business, along with a corresponding logo. Id. at ¶¶ 24–26. It also uses the ticker symbols SFT, SFX, and WSFX to identify its cryptocurrencies. Id. ¶ 24.

In July 2021, SafeLaunch—which is incorporated in the British Virgin Islands and has high-level officers located primarily in Dubai, United Arab Emirates—began selling a token named "SafeX" using the exchange ticker "SFEX." Mot. to Dismiss at 5; Compl. ¶¶ 56–58. In contrast to Safex, SafeLaunch's cryptocurrencies cannot themselves be used to purchase goods or services. Declaration of Imran Iqbal ("Iqbal Decl.") ¶ 26. Rather, SafeLaunch allows venture capital investors to use its token to fund promising start-up companies identified by SafeLaunch. Id. ¶ 15.

Safex alleges that SafeLaunch's use of the name "SafeX" and the ticker "SFEX" has created confusion and caused potential customers to unwittingly purchase SafeLaunch's currency instead of Safex's. Compl. ¶¶ 62–78. After SafeLaunch communicated that it would not stop using the SafeX mark and SFEX ticker despite a cease-and-desist letter, Safex filed this lawsuit in March 2022. Id. ¶¶ 94–97. Safex alleges trademark infringement in violation of the Lanham

Act, common law trademark infringement, and unfair competition in violation of D.C. common law. Compl. ¶¶ 134–61. The complaint seeks $20 million in damages, a declaration that Safex is the rightful owner of the Safex trademark and SFEX ticker symbol and that SafeLaunch's use of these marks violates Safex's rights, and an order enjoining SafeLaunch from using the marks in connection with its business. Id. ¶¶ 162–64, id., Prayer for Relief ¶¶ 1–9.

In July 2022, SafeLaunch filed a motion to dismiss contending, in relevant part, that the Court lacked personal jurisdiction over it. Agreeing that Safex had not met its burden to show that SafeLaunch has minimum contacts with D.C. or the United States as a whole, the Court concluded that it could not exercise specific personal jurisdiction over SafeLaunch. Mem. Op. & Order at 23. Accordingly, in March 2023, the Court granted SafeLaunch's motion to dismiss without prejudice and permitted Safex to pursue limited jurisdictional discovery relevant to the Court's minimum contacts analysis. Id. at 25–26. Any jurisdictional discovery was to be completed by May 2023, after which SafeLaunch could renew its motion to dismiss if it so chose. Id. at 26. Safex served its jurisdictional discovery requests on SafeLaunch in April. Mot. for Default J. at 2; Decl. of Christopher Whalen ("Whalen Decl.").

After that, however, things took a turn. SafeLaunch's counsel moved to withdraw because, per its CEO, SafeLaunch "lack[ed] the financial resources to continue employing counsel in this matter." Mot. to Withdraw at 3. The Court granted counsel's motion to withdraw in May 2023, gave SafeLaunch one month to obtain replacement counsel, and stayed discovery until SafeLaunch obtained counsel. May 2, 2023 Min. Order. Safex did not obtain replacement counsel by the deadline and has failed to do so since. In July 2023, Safex's counsel moved to lift the discovery stay. Although the Court granted that motion, it noted that because SafeLaunch is

3

a corporation that cannot litigate this case pro se, the Court would not compel it to respond to any of Safex's discovery requests unless and until it retained counsel.  July 11, 2023 Min. Order.

According to Safex, throughout this period, its counsel and representatives of SafeLaunch regularly engaged in settlement discussions but were unable to reach an agreement.  Mot. for Default J. at 3–4.  In August 2024, given that SafeLaunch had still failed to obtain replacement counsel despite ample time to do so, the Court directed the Clerk to enter a default in favor of Safex.  Aug. 28, 2024 Min. Order.  Following the Clerk's entry of default, Safex moved for default judgment.  For the reasons that follow, the Court will grant Safex's motion for default judgment in part and deny it in part.

## II.  Legal Standards

Obtaining a default judgment is a two-step process.  See Boland v. Cacper Constr. Corp., 130 F. Supp. 3d 379, 382 (D.D.C. 2015).  A plaintiff must first request that the Clerk of the Court enter default against a party who has "failed to plead or otherwise defend."  Fed. R. Civ. P. 55(a).  The Court then decides whether an entry of default judgment is warranted.  Fed. R. Civ. P. 55(b).  Default judgment is available when "the adversary process has been halted because of an essentially unresponsive party."  Boland v. Elite Terrazzo Flooring, Inc., 763 F. Supp. 2d 64, 67 (D.D.C. 2011) (citation omitted).  "Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint."  Id.  After establishing liability, the Court makes an independent evaluation of the damages award, which it has "considerable latitude" to determine.  Id. (citing Jones v. Winnepesaukee Realty, 990 F.2d 1, 4 (1st Cir. 1993)).  The Court may hold a hearing if necessary or can rely on "detailed affidavits or documentary evidence" submitted by plaintiffs in support of their claims.  Boland v. Providence Constr. Corp., 304 F.R.D. 31, 36 (D.D.C. 2014) (citation omitted).

### III. Analysis

#### A. Personal Jurisdiction

As noted, in its last opinion, the Court concluded that Safex had not met its burden to establish personal jurisdiction over SafeLaunch. The state of play has changed since then, for one reason: SafeLaunch has failed to acquire new counsel or respond to Safex's jurisdictional discovery requests. Accordingly, it has waived any continued challenge to the Court's personal jurisdiction over it.

In contrast to subject matter jurisdiction, "the requirement of personal jurisdiction may be intentionally waived, or for various reasons a defendant may be estopped from raising the issue." Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 704 (1982). As relevant here, the Supreme Court has explicitly noted that a court may enter a finding of personal jurisdiction as a sanction under Federal Rule of Civil Procedure 37(b)(2)(A) for a party's failure to obey a discovery order. Id. at 705. Applying Insurance Corporation of Ireland, the D.C. Circuit held in an unpublished order that a defendant "forfeited his right to challenge personal jurisdiction by making an appearance to challenge personal jurisdiction and then failing to respond to discovery and pre-trial orders." Joyce v. Interstate Concrete, No. 99-7016, 1999 WL 728341, at *1 (D.C. Cir. Aug. 4, 1999) (per curiam). Thus, the district court did not abuse its discretion by entering a default judgment against the defendant. Id.

Here too, SafeLaunch has failed to respond to Safex's jurisdictional discovery requests. Safex served document requests on SafeLaunch in April 2023. Mot. to Lift Disc. Stay at 1; see Whalen Decl. Three days prior to its responses being due, SafeLaunch's former counsel informed Safex's attorney that he was moving to withdraw. Mot. to Lift Disc. Stay at 2. After the Court granted counsel's motion to withdraw in May 2023, SafeLaunch never obtained

5

replacement counsel.  See Dkt.  And over two years later, SafeLaunch remains unrepresented.  Accordingly, the Court has been unable to compel SafeLaunch to respond to any of Safex's jurisdictional discovery requests.

By failing to engage counsel who could then respond to Safex's requests, SafeLaunch has forfeited its personal-jurisdiction defense.  SafeLaunch "submit[ed] to the jurisdiction of [this Court] to decide the question of personal jurisdiction" by opposing Safex's motion to dismiss on that basis.  City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 140 (2d Cir. 2011).  By essentially abandoning its litigation of that question before the Court issued a final determination, SafeLaunch "acquiesced to [the Court's] jurisdiction."  Id.  Its personal jurisdiction challenge accordingly no longer poses a bar to the entry of a default judgment.

B. Liability

"Where, as here, there is a complete 'absence of any request to set aside the default or suggestion by the defendant that it has a meritorious defense, it is clear that the standard for default judgment has been satisfied.'"  Breaking the Chain Found., Inc. v. Capitol Educ. Support, Inc., 589 F. Supp. 2d 25, 29 (D.D.C. 2008) (quoting Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC, 531 F. Supp. 2d 56, 57 (D.D.C. 2008)).  Because the Clerk of the Court entered a default against Safex, the well-pleaded factual allegations in the complaint are taken as true.  Here, the Court concludes that Safex's complaint sufficiently alleges facts to support its claims.

Safex's complaint alleges trademark infringement under the Lanham Act (Count I), common law trademark infringement (Count II), and unfair competition (Count III).  Compl. ¶¶ 134–61.  To prevail on these claims, Safex must show "(1) that it owns a valid trademark, (2) that its trademark is distinctive or has acquired a secondary meaning, and (3) that there is a

substantial likelihood of confusion between the plaintiff's mark and the alleged infringer's mark." Breaking the Chain, 589 F. Supp. 2d at 29 (citation omitted).

Safex's complaint meets all three elements. First, Safex has alleged that it owns the Safex Mark. "[T]o show ownership of trademark, plaintiffs must show that they were the first to use the mark in commerce." Safex Found., Inc. v. Safeth, Ltd., 531 F. Supp. 3d 285, 298 (D.D.C. 2021). Safex developed the mark and has used it since 2015 to market its cryptocurrencies in its own online marketplace and on third-party websites like GitHub and YouTube. Compl. ¶¶ 1, 24, 26, 27. It currently sells three cryptocurrencies using the Mark: Safex Token, Safex Cash, and Wrapped Safex Cash. Id. ¶ 6. "By offering Safex Tokens and Safex Cash for sale and use for transactions to buyers on the internet since at least 2017 . . . Safex has been using the trademark in commerce." Safex, 531 F. Supp. 3d at 299.

Moreover, although Safex's trademark registration application remained pending as of the date of its complaint, that does not change the analysis. "[T]he Lanham Act protects unregistered trademarks in addition to registered trademarks." Id. The use of a mark in commerce, not registration, "is the *sine qua non* of a trademark right under the Lanham Act." Id. (citation omitted). Here, Safex has sufficiently alleged that it was the first to use the Safex Mark in commerce.

Second, the Safex Mark is distinctive. "[T]o show that a trademark is distinctive or has secondary meaning, plaintiffs can demonstrate that their claimed trademark is 'arbitrary,' meaning that it is a term that 'is commonly used in the language, but has no intrinsic connection to the product.'" Id. at 298 (quoting Blinded Veterans Ass'n v. Blinded Am. Veterans Found., 872 F.2d 1035, 1040 (D.C. Cir. 1989)). The Safex Mark depicted throughout the complaint, Compl. ¶¶ 27, 29, 30, 31, 33, bears no intrinsic connection to the cryptocurrencies it is used to

7

sell, see id. ¶¶ 34–51.  Accordingly, the Court agrees with a fellow court in this district that "the name and logo, consisting of a made-up word and an abstract image, possibly of a dolphin, bear no intrinsic connection to the products Safex offers using that trademark, namely Safex's cryptocurrencies and the Safex Marketplace."  Safex, 531 F. Supp. 3d at 299.[1]

Third, the allegations in Safex's complaint establish "a substantial likelihood of confusion between" Safex's mark and SafeLaunch's mark.  Breaking the Chain, 589 F. Supp. 2d at 29 (citation omitted).  SafeLaunch's "Infringing Token" is called "SafeX" with the ticker SFEX.  Compl. ¶ 60.  Thus, customers that type "Safex" into the search bar in certain cryptocurrency marketplaces will see listings for both Safex's currency and SafeLaunch's.  Id. ¶ 46.  That could easily lead to confusion.  Safex also alleges that SafeLaunch's use of the mark "confused the market and cheapened the Safex brand" by associating SafeLaunch's technical failures with Safex.  Id. ¶ 62.  "In these circumstances, where two parties use the same mark and nearly identical logos to advertise and sell functionally similarly products, confusion is likely." Safex, 531 F. Supp. 3d at 299.  Accordingly, Safex has satisfied the third element and is entitled to default judgment on liability.

C. Appropriate Relief

Having established SafeLaunch's liability for infringing Safex's trademark, the Court next turns to the appropriate relief.

*1. Permanent Injunction*

Safex first seeks a permanent injunction prohibiting SafeLaunch from using in commerce any mark, name, or design that creates a likelihood of confusion with the Safex Mark and the

---

[1] Alternatively, the Safex Mark also qualifies as a "fanciful" term, as it appears to have been "coined for the purpose of serving as a trademark."  Safex, 531 F. Supp. 3d at 298 (citation omitted).

SFEX ticker or from publicly holding itself out as their owner.  Mot. for Default J. at 13–14; Compl., Prayer for Relief ¶ 2.  The Court will grant Safex's request for a permanent injunction barring SafeLaunch from infringing Safex's trademark.

A district court has authority under the Lanham Act to grant injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent further violations of the plaintiff's trademark rights.  15 U.S.C. § 1116(a).  In determining whether to enter a permanent injunction, the Court considers a modified iteration of the factors relevant to assessing whether to grant a preliminary injunction: "(1) success on the merits, (2) whether the plaintiffs will suffer irreparable injury absent an injunction, (3) whether, balancing the hardships, there is harm to defendants or other interested parties, and (4) whether the public interest favors granting the injunction."  ACLU v. Mineta, 319 F.Supp.2d 69, 87 (D.D.C. 2004).

Safex checks all four boxes.  First, as already explained, Safex has succeeded, by default, on the merits of its claims.  Second, it is generally recognized that "[t]rademark infringement by its very nature causes irreparable injury."  Health Ins., Ass'n of Am. v. Novelli, 211 F.Supp.2d 23, 28 (D.D.C.2002) (alteration in original) (quoting Appleseed Found. Inc. v. Appleseed Inst., Inc., 981 F. Supp. 672, 677 (D.D.C. 1997)).  And despite Safex's cease-and-desist demand, pursuit of litigation, and attempts at settlement, SafeLaunch has continued to use the Safex Mark and has not provided any assurances that it will stop.  See Mot. for Default J. at 15.  Accordingly, the Court concludes that SafeLaunch "likely will continue to infringe on plaintiff's rights absent an injunction."  Metropolis Special Police Dep't v. D.A.T.A. Mgmt. Consulting, LLC, No. 21-cv-2171, 2022 WL 59390, at *6 (D.D.C. Jan. 6, 2022).

Finally, an injunction would not harm other interested parties, and the public interest favors protecting against further violation of federal trademark laws. Entry of a permanent injunction enjoining SafeLaunch from further infringing Safex's trademark is therefore appropriate. See Breaking the Chain, 589 F. Supp. 2d at 30.

    2. *Money Damages*

Next, Safex seeks monetary damages from SafeLaunch for its trademark infringement. "To recover a defendant's profits under the Lanham Act, the plaintiff must show the defendant acted 'willfully or in bad faith.'" Id. at 31 (citation omitted). SafeLaunch, by its default, has admitted that it "acted willfully, with knowledge of Safex's rights in the Safex Mark and SFEX ticker[.]" Compl. ¶ 141. Moreover, SafeLaunch's refusal to cease using the Safex Mark and SFEX ticker after receiving Safex's cease-and-desist letter further indicates willfulness. See id. at ¶¶ 89–97.

Having established that it may be entitled to some amount of damages, Safex requests that the Court conduct an inquest pursuant to Rule 55(b)(2) so that it may put the relevant evidence before the Court. Mot. for Default J. at 16. The Court wonders how Safex will be able to establish the degree to which SafeLaunch profited from the use of its trademark given the likely unavailability of discovery from SafeLaunch. But the Court will nonetheless afford Safex an opportunity to present evidence on the question. Accordingly, Safex is directed to submit affidavits and other relevant documentation supporting its request for damages by no later than thirty days from the date of this opinion.

    3. *Attorney's Fees*

Safex next seeks $130,149 in attorneys' fees incurred between March 25, 2023 and September 30, 2024. Mot. for Default J. at 17. Under the Lanham Act, courts may "award

10

reasonable attorney fees to the prevailing party" only in "exceptional cases." 15 U.S.C. § 1117(a). "When the plaintiff is the prevailing party, the D.C. Circuit has construed the 'exceptional cases' standard to require a court to 'find willful or bad faith infringement by the defendant in order to award attorney's fees to the plaintiff.'" Metropolis, 2022 WL 59390, at *7 (quoting Reader's Dig. Ass'n, Inc. v. Conservative Dig., Inc., 821 F.2d 800, 808 (D.C. Cir. 1987), overruled on other grounds by Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994)).[2]  Here, for the reasons already explained, SafeLaunch has admitted to willful infringement.

Safex has not sufficiently supported its request for attorney's fees, however. Some of the invoices it submitted are entirely redacted such that even the number of hours for each entry is not ascertainable. Declaration of Joseph Evans, Ex. A ("Invoices") at 2 (page numbers designated by CM/ECF). Moreover, the invoices do not specify the hourly rate corresponding to each time entry, and the accompanying declaration only sets forth an hourly range for some attorneys. See Evans Decl. ¶¶ 7–8. Accordingly, the relationship between the invoices and the ultimate $130,149 request is unclear.

Nor does Safex justify the rates charged for each attorney beyond stating, without support, that its rates are fair, reasonable, and comparable to the rates charged by other Am Law 100 law firms. See id. ¶ 10. Recognizing the possibility that the Court may "find[] the information provided by Safex in connection with this fee request to be insufficient," Safex requests a Rule 55(b)(2) inquest for attorney's fees. Mot. for Default J. at 19. Accordingly, the

---

[2] Recent Supreme Court and D.C. Circuit precedent, however, suggest this finding may no longer be required. See Metropolis, 2022 WL 59390, at *7 (citing Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014) and Xereas v. Heiss, 987 F.3d 1124, 1136–37 (D.C. Cir. 2021)). The Court need not decide that question because Safex has established SafeLaunch's willfulness here.

11

Court will order Safex to submit materials "establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates" by thirty days from the date of its opinion.  Metropolis, 2022 WL 59390, at *8.

        *4. Declaratory Judgment*

Lastly, Safex seeks a declaratory judgment of its priority rights to the Safex Mark and that SafeLaunch's use of SafeX and SFEX infringes upon Safex's rights.  Mot. for Default J. at 19.  Courts in this district have awarded declaratory judgments "due to the willful nature of defendant's default and the prejudice that default has caused and will continue to cause plaintiffs."  Cintec Int'l Ltd. v. Parkes, 468 F. Supp. 2d 77, 79 (D.D.C. 2006).  Although many of the relevant cases concern declarations of non-infringement, "[d]eclarations of infringement sought by patentees against parties who will allegedly infringe in the future," though less frequent, "have nevertheless been allowed to proceed."  Lang v. Pac. Marine & Supply Co., 895 F.2d 761, 763 (Fed. Cir. 1990) (collecting cases).

For the reasons already explained, Safex has established that SafeLaunch's infringement of the Safex Mark is willful and continues to cause it prejudice.  The Court will therefore grant its request for a declaratory judgment.

## IV. Conclusion

For these reasons, Safex's Motion for Default Judgment will be granted in part and denied in part.  A separate order accompanies this Memorandum Opinion.

                                                      _____
                                                      CHRISTOPHER R. COOPER
                                                      United States District Judge

Date: August 15, 2025